# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2410

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Eddie Williams, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2008
Filed: July 9, 2008

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Eddie Williams, Jr. pleaded guilty to possession with intent to distribute a mixture or substance containing cocaine base, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). At sentencing, the district court[1] determined, over Williams's objection, that Williams was a career offender, sentenced him to 151 months' imprisonment followed by three years of supervised release, ordered him to pay a $2,000 fine, and imposed a $100 special assessment. Williams appeals his career offender status,

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

arguing that the district court erred in concluding that two of his prior drug-related offenses were not related. We affirm.

## I. *Background*
### A. *Facts Underlying Williams's Prior Offenses*

In November 2001,Williams came under the scrutiny of an ongoing federal investigation into crack cocaine trafficking in Fort Smith, Arkansas. The authorities used a confidential informant to purchase cocaine from Williams on several occasions in November, December, and January; however, no immediate arrests were made.

On July 2, 2002, Williams was involved in a traffic stop initiated by Fort Smith police officers—the officers believed Williams had an outstanding warrant. The officers searched Williams and discovered that he was carrying small amounts of marijuana and crack cocaine. Williams was charged, in the Circuit Court of Sebastian County, Arkansas, with possession of cocaine and marijuana with intent to deliver.

Federal authorities arrested Williams in October 2002 charging him with distributing five grams or more of cocaine base, a schedule II controlled substance based on his drug sales to an informant in late 2001 and early 2002. On March 5, 2003, Williams entered a guilty plea to the federal charges, and he was sentenced to a term of 31 months' imprisonment, to be followed by five years supervised release; the court also imposed a $2,000 fine and a $100 special assessment.

Williams entered a guilty plea on the state charges on March 7, 2003 (two days after his plea on the federal charges) and received a suspended sentence of 120 months on the cocaine charge and a suspended sentence of 78 months on the marijuana charge. The sentences were ordered to run concurrently with Williams's federal sentence.

B. *Facts Underlying the Current Offense*

On June 29, 2006, Fort Smith police encountered Williams again. In this traffic stop, Williams was a passenger in a vehicle being driven by a relative. The police searched the vehicle and discovered 14 grams of crack cocaine. Williams was arrested and charged with one count of possession with intent to distribute a mixture or substance containing cocaine base. Williams pleaded guilty to the charge, and the court accepted his guilty plea.

Prior to his June 13, 2007, sentencing hearing, the Probation Department prepared a presentence investigation report (PSR) that categorized Williams as a career offender under U.S.S.G. § 4B1.1 based upon his March 2003 state and federal convictions. Williams objected, arguing that his March 2003 convictions were related for sentencing purposes under § 4A1.2 and should be treated as only one prior conviction. The district court overruled Williams's objection and determined that he was a career offender under U.S.S.G. § 4B1.1. The court's determination raised Williams's criminal history from category IV to category VI. After computing his total offense level to be 29, the district court calculated Williams's advisory Guidelines range as 151 to 188 months.

Williams argued that a departure under U.S.S.G. § 4A1.3(b) was warranted because his criminal history was overstated. The district court denied his departure motion and sentenced Williams to a term of 151 months' imprisonment, which would run concurrently with a 12-month sentence for violation of his supervised release and an undischarged term of imprisonment imposed by the Circuit Court of Sebastian County, Arkansas. Additionally, the district court ordered Williams to serve three years of supervised release following his incarceration and ordered him to pay a fine of $2,000.00 and a $100.00 special assessment.

## II. *Discussion*

The sole issue raised in this appeal is whether Williams's March 2003 prior convictions are related under U.S.S.G. § 4A1.2(a)(2). "We review de novo the district court's construction and interpretation of the criminal history provisions of the sentencing guidelines, and we review for clear error the district court's application of the guidelines to the facts." *United States v. Borer*, 412 F.3d 987, 991–92 (8th Cir. 2005).

> An individual is a career offender if
>
> (1) the defendant was at least 18 years old at the time of the instant conviction; (2) the instant offense of conviction is a felony that is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). "Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." U.S.S.G. § 4A1.2(a)(2).

On appeal, Williams argues that the district court committed clear error when it found that he was a career offender because his March 2003 convictions were related. We disagree.

### A. *Intervening Arrest*

In response, the government contends that Williams's convictions cannot be related because the offenses were separated by an intervening arrest. "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2 cmt. n.3. We agree with Williams and conclude that his prior offenses were not separated by an intervening arrest.

The government argues, in essence, that Williams's two prior convictions were separated by an intervening arrest because he was arrested for the offenses at different times—he was arrested by the state authorities in July 2002, but was not arrested for his federal offense until October 2002. The government's argument overlooks the fact that the relevant "intervening arrest" inquiry looks at whether the defendant committed the second offense before he was arrested for the first. *See* U.S.S.G. § 4A1.2 cmt. n.3.

Here, although Williams was not arrested on the federal offense until after he was arrested on the state offense, his commission of the federal offense pre-dated his arrest on the state offense. Williams's illegal actions that led to the federal offense took place in late 2001 and early 2002, and he was not arrested for either the federal or state offense until July 2002. Because Williams committed the federal offense before he was arrested for the state offense, his two prior offenses are not separated by an intervening arrest.

B. *Williams's Arguments that the Convictions Are Related*

Williams argues that the federal offense and the state offense are related because they were part of a common scheme or because the state and federal cases were practically consolidated for sentencing purposes. The Guidelines define related cases as those that "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 cmt. n.3.

1. *Common Scheme or Plan*

To demonstrate a common scheme, Williams points to the geographic area of his crimes (each occurred in Fort Smith, AR), the nature of the offenses (they involved drugs), and the participants in the offense (Williams and the confidential informant). We conclude that Williams's offenses were not a part of a common scheme or plan.

In determining whether two offenses are part of a common scheme or plan, several factors should be considered, such as:

> (1) the time period within which the offenses took place, (2) the participants involved, (3) the victims targeted, (4) the motive, (5) the modus operandi, (6) the geographic location of the crimes, (7) the substantive offenses committed, (8) whether the acts were uncovered by a common investigation, and (9) whether the offenses were jointly planned.

*United States v. Davidson*, 437 F.3d 737, 740 (8th Cir. 2006). Furthermore, "[a] common scheme or plan implies that the crimes were jointly planned, or at least that the offender intended that the second would be committed as a consequence of the first." *United States v. McCracken*, 487 F.3d 1125, 1127 (8th Cir. 2007) (citation and punctuation omitted). "[A] single common scheme or plan involves something more than simply a repeated pattern of conduct." *Id*. (quoting *Davidson*, 437 F.3d at 740).

That the offenses both took place in Fort Smith, is insufficient to demonstrate that the crimes took place in the same geographic location. *See e.g. Davidson*, 437 F.3d at 739–41(finding that a defendant's crimes were separated by distance when they occurred eight miles apart in the same town). Further, standing alone, the fact that the offenses both involved drugs and the same confidential informant does not make these events part of a common scheme. *See id*. at 740–41 (acknowledging that where there is no evidence of "common planning," two crimes may merely be similar but not treated as related under the Guidelines). All of the factors cited by Williams, taken as a whole, suggest only a repeated pattern of conduct. Therefore, Williams has failed to demonstrate that his federal and state offenses were part of a common scheme.

### 2. *Consolidation*

In his final argument, Williams argues that the state and federal offenses should be treated as related because they were functionally consolidated for sentencing

purposes. We conclude, however, that the federal and state convictions were not consolidated within the meaning of the § 4A1.2(a)(2) cmt. n.3.

We have consistently rejected the argument that two sentences may be functionally consolidated; we have required a formal order of consolidation. *See e.g. United States v. Mills*, 375 F.3d 689, 691 n.4 (8th Cir. 2004) (stating that "two or more sentences imposed at the same time are not related for purposes of § 4A1.2(a)(2) if the cases proceeded to sentencing under separate docket numbers, and there was no formal order of consolidation") (citations and punctuation omitted). Here the federal and state cases proceeded under separate docket numbers, and there was no formal order of consolidation; therefore, we conclude that Williams's functional consolidation argument is without merit.[2]

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

_____

[2]Williams also argued that the 2007 amendments to § 4A1.2(a)(2) bolster his functional consolidation argument. We do not reach the merits of this argument because the Guidelines relevant to this appeal are the Guidelines in effect at the time of sentencing. *See United States v. Adams*, 509 F.3d 929, 932 n.4 (8th Cir. 2007) (stating that the district court shall use the version of the Guidelines in effect at the time of sentencing unless doing so would violate the Ex Post Facto Clause of the Constitution) (quoting U.S.S.G. § 1B1.11(a)). The Guidelines in effect at the time of sentencing were the 2006 version, and Williams has not demonstrated that this version would cause an Ex Post Facto Clause violation. Furthermore, even assuming such a violation would result, the appropriate Guidelines to use would be the Guidelines in effect during the commission of the offense of conviction, not those in effect while the case was on appeal. *Id.* (quoting U.S.S.G. § 1B1.11(b)(1)).