# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 17, 2012

No. 11-50369

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

NICHOLAS ESPINOZA, also known as Nick Espinoza,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.
PRISCILLA R. OWEN, Circuit Judge.

Defendant Nicholas Espinoza appeals from his sentence after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Because restitution to a pawn shop to which Espinoza sold stolen firearms that he unlawfully possessed was not authorized by 18 U.S.C. § 3663 under the facts of this case, we vacate and remand for resentencing. We additionally conclude that the district court plainly erred in calculating Espinoza's criminal history but do not reach the question of whether that error affected Espinoza's substantial rights since resentencing will occur.

No. 11-50369

## I

In late January 2010, the Fredericksburg, Texas Police Department received a report that four firearms had been stolen from a home. In early February, a detective received a phone call from a confidential informant who reported that Espinoza and his wife, Pamla Meier, had been pawning stolen property in San Antonio and Austin. Investigators subsequently learned that three of the four stolen firearms had been pawned at Cash America Pawn in Austin (Cash America) by Espinoza for a total of $525. A criminal record check revealed that Espinoza had been convicted of two prior felonies in Texas. Espinoza was subsequently indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

Espinoza pleaded guilty. Espinoza's counsel made clear that Espinoza was admitting to possessing and pawning the firearms but not stealing them. The court accepted Espinoza's plea, and a Presentence Investigation Report (PSR) was prepared. The total offense level was calculated to be fifteen. In addition, the PSR attributed five criminal history points to Espinoza for three countable offenses and added two more because the instant offense was committed while on probation. Consequently, the PSR calculated Espinoza's Guidelines range of imprisonment to be thirty to thirty-seven months. It also recommended that Espinoza be ordered to pay $525 in restitution to Cash America, as the stolen firearms were seized and returned to their owner.

Espinoza only objected to the recommendation that he be required to pay restitution. The district court overruled that objection and adopted the findings and recommendations of the PSR. The district court subsequently sentenced Espinoza to thirty months of imprisonment and three years of supervised release. The district court also ordered that Espinoza pay restitution in the amount of $525 to Cash America.

No. 11-50369

## II

Espinoza objected to the award of restitution at his sentencing, and the issue is therefore preserved. Whether the law permits restitution to be imposed as part of a sentence in a particular case is reviewed de novo.[1]

"A federal court cannot order restitution 'except when authorized by statute.'"[2] Under the Victim and Witness Protection Act (VWPA), a district court may order a defendant to pay restitution to any victim of an offense under Title 18 of the United States Code as well as victims of a number of other enumerated offenses.[3] Under the Mandatory Victims Restitution Act (MVRA), a district court is required to order a defendant to pay restitution to a victim under certain circumstances, which include those in which the victim suffered a pecuniary loss as a result of a crime of violence or an offense against property under Title 18, including any such offense committed by fraud or deceit.[4] Under both statutes, restitution can be awarded to a "victim," defined as "a person directly and proximately harmed as a result of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."[5] Relying on the Supreme Court's decision in *Hughey v. United States*,[6] we have held that "a district court can award restitution to victims of the offense,

---

[1] *United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008) (citing *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004)).

[2] *United States v. Love*, 431 F.3d 477, 479 (5th Cir. 2005) (quoting *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998)).

[3] 18 U.S.C. § 3663(a)(1)(A).

[4] *Id.* § 3663A(a)(1), (c)(1).

[5] *Id.* §§ 3663(a)(2), 3663A(a)(2).

[6] 495 U.S. 411 (1990).

but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted."[7]

The record reflects that restitution was imposed pursuant to § 3663. We first note that the probation officer appears to have recommended, and the district court appears to have imposed, restitution partially because Espinoza's possession of the firearms was part of a scheme in which he would steal and then sell property, including firearms. However, acts in furtherance of a conspiracy, scheme, or pattern of criminal activity can only support restitution if the scheme, conspiracy, or pattern is an element of the offense.[8] Espinoza was charged and pleaded guilty to being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g). This offense does not "involve[] as an element a scheme, conspiracy, or pattern of criminal activity."[9] Therefore, the only ground for a restitution award pursuant to § 3663 is if Cash America was directly and proximately harmed as a result of Espinoza's possession of the firearms.

Espinoza was convicted only of possessing firearms, not stealing or illegally transferring firearms. In *United States v. Mancillas*, the defendant pleaded guilty to "knowingly possessing counterfeited securities" and "knowingly possessing implements designed to make counterfeited securities with the intent

---

[7] *United States v. Maturin*, 488 F.3d 657, 660-61 (5th Cir. 2007) (citing *Hughey*, 495 U.S. at 413); *see also United States v. Mancillas*, 172 F.3d 341, 343 (5th Cir. 1999) (per curiam) ("We therefore hold that a defendant sentenced under the provisions of the MVRA is only responsible for restitution for the conduct underlying the offense for which he has been convicted.").

[8] 18 U.S.C. § 3663(a)(2).

[9] *See id.*; *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995) ("In order to convict one for felon in possession of a firearm, the government must prove that the defendant (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm." (citing *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988)).

that they be so used."[10]   The district court ordered that the defendant pay restitution to five check-cashing entities.[11]  We reversed the restitution order, holding that "[the defendant's] possession of the implements with the intent to use them in the future can in no way be said to directly and proximately have caused a previous harm, specifically, the harm to the check-cashing companies."[12]  Because the restitution order was not for conduct underlying the offense for which the defendant had been convicted, we held that restitution was not proper.[13]  Similarly, in *United States v. Hayes*, the defendant pleaded guilty to possession of stolen mail "on or about" March 31, 1989.[14]  The stolen mail was three credit cards.[15]   The district court ordered that the defendant pay restitution to the credit card companies for charges he had made in the months prior to March 31.[16]  We vacated the restitution order, observing that "Hayes pleaded guilty to an indictment charging him with mere possession on one day, not with conduct or a scheme that resulted in losses to any victims."[17]  We noted that the loss was not from Hayes's possession of the cards but from Hayes's unauthorized use of the cards.[18]

---

[10] *Mancillas*, 172 F.3d at 341.

[11] *Id*. at 341-42.

[12] *Id*. at 343.

[13] *Id.*

[14] 32 F.3d 171, 172 (5th Cir. 1994).

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id*. at 173.

No. 11-50369

The harm to the pawn shop in this case is not based on the conduct underlying Espinoza's offense—possession of a firearm—but rather the theft and subsequent sale of stolen firearms. Espinoza was not charged with or convicted of possession and transfer of stolen firearms. Mere possession of a firearm is not the equivalent of transferring stolen firearms.

The Government argues that the harm to Cash America would not have occurred "but for" Espinoza's possession of the firearms. Assuming, without deciding, that a relevant inquiry is whether the harm was a reasonably foreseeable result of the offense, the fact remains that Espinoza was not charged either with stealing firearms[19] or illegally transferring firearms.[20] It may be that the harm here would be a foreseeable result of stealing firearms, and it is even more likely that it would be a foreseeable result of illegally transferring firearms. However, there is nothing inherent in the possession of firearms by a felon that would make one foresee that those firearms were stolen and would later be transferred, causing financial harm to the transferee. Accordingly, Cash America was not a "victim" within the meaning of the VWPA.

The district court erred in ordering restitution, and the portion of the sentence imposing restitution must be vacated. It is unclear whether the remainder of the sentence should be vacated. Our court has in some cases

---

[19] *See* 18 U.S.C. § 922(u) ("It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.").

[20] *See* 18 U.S.C. § 922(j) ("It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.")

No. 11-50369

vacated the entire sentence when an order of restitution was vacated,[21] but in other cases, our court has vacated only the restitution order and left in place a term of imprisonment that was also included in the sentence.[22] We conclude that

[21] *See, e.g.*, *United States v. Hickman*, 331 F.3d 439, 448 (5th Cir. 2003) ("Because the district court imposed the same amount of restitution . . . to run concurrently in both cases and because the order for restitution is part and parcel of each overall sentence, both sentences are VACATED and the case is REMANDED for resentencing not inconsistent with this opinion." (citing *Hayes*, 32 F.3d at 173)); *United States v. Jimenez*, 77 F.3d 95, 100 (5th Cir. 1996) ("We therefore vacate the sentence and remand for resentencing keeping in mind that the district court imposed no fine in light of the restitution order." (citing *Hayes*, 32 F.3d at 173; *United States v. Aguirre*, 926 F.2d 409 (5th Cir. 1991))); *Hayes*, 32 F.3d at 173 ("Since the order for restitution represents only one component of the sentencing court's balance of sanctions, the entire sentence is VACATED and the case is REMANDED for resentencing."); *Aguirre*, 926 F.2d at 410 (recognizing that some cases merely vacate the order of restitution, but deciding to vacate the entire sentence in light of the fact that the district court did not fine the defendant because of the restitution order, recognizing that "[t]o vacate the restitution order and allow the remainder of the sentence to stand might undermine the deterrent and punitive effect that the original, albeit illegal, sentence was intended to achieve"); *see also United States v. Chaney*, 964 F.2d 437, 451 (5th Cir. 1992) ("Restitution under the VWPA is a criminal penalty and a component of the defendant's sentence.").

[22] *See, e.g.*, *United States v. Arledge*, 553 F.3d 881, 898-99, 901 (5th Cir. 2008) (vacating a restitution order under the MVRA for recalculation of the actual loss but affirming the district court's use of the 2006 Sentencing Guidelines and the term of imprisonment imposed under those Guidelines); *United States v. Maturin*, 488 F.3d 657, 663-64 (5th Cir. 2007) (vacating only the restitution order and remanding after holding that the district court plainly erred in ordering restitution for losses caused by conduct other than that for which the defendant was convicted); *United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007) (vacating the restitution order and remanding for resentencing but affirming the term of imprisonment); *United States v. Beydoun*, 469 F.3d 102, 107-09 (5th Cir. 2006) (affirming the defendant's sentence of imprisonment because there was sufficient evidence to support the enhancement, but vacating the restitution order under the MVRA and remanding for determination of the actual loss); *United States v. Adams*, 363 F.3d 363, 368 (5th Cir. 2004) (vacating only the restitution order and remanding for recalculation); *United States v. Norris*, 217 F.3d 262, 275 (5th Cir. 2000) (vacating only the restitution order and affirming the sentence in all other respects without remand); *United States v. Campbell*, 106 F.3d 64, 70 (5th Cir. 1997) (affirming the sentence of imprisonment, but reversing and vacating the court's restitution order without remand); *United States v. Upton*, 91 F.3d 677, 689 (5th Cir. 1996) (vacating two defendants' restitution orders and remanding for recalculation, but affirming the sentences in all other respects); *United States v. Stout*, 32 F.3d 901, 904-05 (5th Cir. 1994) (finding an erroneous upward departure to be harmless, vacating only the restitution award, and remanding for resentencing); *United States v. Holley*, 23 F.3d 902, 915 (5th Cir. 1994) (vacating the restitution order and remanding); *United States v. Reese*, 998 F.2d 1275, 1286 (5th Cir. 1993) (vacating the portion of the district court's judgment as to the amount of restitution and remanding); *United States v. Cockerham*, 919 F.2d 286, 287 (5th Cir. 1990)

the entire sentence should be vacated in the present case because restitution is "only one component of the sentencing court's balance of sanctions,"[23] and as we discuss below, there was other error in the sentencing process.  Under these circumstances, we choose to follow the line of our decisions that vacates the entire sentence when restitution was erroneously imposed.

### III

Espinoza additionally argues that the district court erred in calculating his criminal history.  Because this issue is likely to recur following remand, we consider it.  Espinoza admits that he did not object when the district court counted two of his prior convictions and sentences as separate sentences, and therefore we review his challenge to the district court's application of § 4A1.2(a)(2) for plain error.[24]  When reviewing for plain error, we determine whether the error is "clear or obvious, rather than subject to reasonable dispute," and if the error "affected the appellant's substantial rights."[25]  Even if the appellant can meet this standard, we will only reverse if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[26]

Espinoza argues that the district court plainly erred in assessing separate criminal history points for his two Texas convictions in 2006.  He argues that the Sentencing Guidelines require those convictions to be treated as a single conviction, lowering his criminal history score and resulting in a Guidelines

---

(vacating restitution order, but affirming other aspects of the sentence).

[23] *See Hayes*, 32 F.3d at 173.

[24] *United States v. John*, 597 F.3d 263, 282 (5th Cir. 2010).

[25] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

[26] *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (internal quotation marks omitted).

range of twenty-four to thirty months of imprisonment instead of thirty to thirty-seven months as calculated by the district court.

The Sentencing Guidelines in effect when Espinoza was sentenced state:

If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.[27]

The PSR indicates, and neither party disputes, that Espinoza was sentenced for both of his 2006 Texas convictions on the same day. Thus, the Guidelines, quoted above, state that if there was no intervening arrest between the first and second offenses, the sentences are not to be treated separately.

The PSR indicates that Espinoza committed burglary on November 29, 2005. On February 3, 2006, police found Espinoza in possession of cocaine, a state offense, and immediately arrested him. He was released on bond and was subsequently arrested on August 23, 2006, for his prior burglary. He was sentenced in state court for both offenses on November 9, 2006.

Although we understand why a court might conclude that the intent of the Guidelines is to count sentences for demonstrably different offenses separately, the literal language of § 4A1.2(a)(2) does not permit that result in the present case. The Guidelines unambiguously direct that "[i]f there is no intervening arrest, prior sentences are counted separately unless . . . the sentences were imposed on the same day."[28]   Under the Guidelines, offenses are separated by an intervening arrest when "the defendant is arrested for the first offense prior

---

[27] U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(2) (2010).

[28] Id.

to committing the second offense."[29]  Espinoza was not arrested for the first offense until six months after committing the second offense.  Accordingly, there was no intervening arrest between the first and second offenses.  The district court should not have treated the offenses separately.  Because the error is clear from the language of the Guidelines,[30] the district court plainly erred in treating Espinoza's two 2006 convictions separately.

The Government argues that the February 2006 arrest was an intervening arrest because it occurred after Espinoza had committed the burglary offense in November 2005.  According to the Government, "It doesn't matter whether the arrest comes after the commission of the second crime or the first crime."  This argument contravenes the plain language of the Guidelines.  The Eighth Circuit was faced with a similar argument under the predecessor to the current Guidelines and rejected it.[31]  The defendant in that case was arrested in July 2002 by state police for a drug offense.[32]  Federal authorities later arrested the defendant in October 2002 for offenses occurring in late 2001 and early 2002.[33]  Just as in this case, the Government argued that the two convictions were separated by an intervening arrest because the defendant was arrested at different times.[34]  The Eighth Circuit held that "[t]he government's argument overlooks the fact that the relevant 'intervening arrest' inquiry looks at whether

---

[29] *Id.*

[30] *See United States v. Blocker*, 612 F.3d 413, 416 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 623 (2010) ("As our conclusion is reached by a straightforward application of the guidelines, the error was also plain.").

[31] *United States v. Williams*, 533 F.3d 673, 676-77 (8th Cir. 2008).

[32] *Id.* at 675.

[33] *Id.*

[34] *Id.* at 676.

No. 11-50369

the defendant committed the second offense before he was arrested for the first."[35]

The Government also argues that "the purpose of the guideline is to count convictions for related crimes committed during one criminal episode together and to count those separated by time that are not part of a single criminal episode separately." Prior to 2007, the Sentencing Guidelines required that prior sentences in unrelated cases were to be counted separately, while prior sentences in related cases were to be treated as one sentence.[36] The comments instructed that sentences were not considered related if they were separated by an intervening arrest.[37] They were considered related, however, if the corresponding offenses "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing."[38] The current Guidelines were amended in an effort to resolve perceived confusion.[39] The comments to § 4A1.2 note that counting multiple prior sentences as a single sentence may underrepresent a defendant's criminal history and therefore warrant an upward departure from the Guidelines.[40] We therefore conclude that the Government's arguments regarding the intent of this section of the Guidelines find no support in the section's provisions.

---

[35] *Id.*

[36] U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(2) (2006).

[37] *Id.* § 4A1.2 cmt. n.3.

[38] *Id.*

[39] *See United States v. Marler*, 527 F.3d 874, 877 n.1 (9th Cir. 2008) ("The Sentencing Commission explained that § 4A1.2 needed to be amended because the 'related cases' rule was too complex and had led to confusion and a 'significant amount of litigation.'" (citation omitted)).

[40] U.S. SENTENCING GUIDELINES MANUAL § 4A1.2 cmt. n.3 (2010).

No. 11-50369

Espinoza contends that the district court's error in calculating the Guidelines advisory sentencing range as thirty to thirty-seven months instead of twenty-four to thirty months resulted in substantial harm because it is reasonably probable that had the correct sentencing range been utilized the district court would have sentenced him to less than the thirty months of imprisonment that was imposed. Because we are vacating the entire sentence for the reasons discussed above, we do not consider whether the error in calculating Espinoza's criminal history affected his substantial rights.

*    *    *

For the foregoing reasons, the judgment of the district court is VACATED, and the case is REMANDED for resentencing.