**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-40700

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

REY REYES MANCILLAS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

April 9, 1999

Before WISDOM, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:

Background

Rey Reyes Mancillas pleaded guilty to one count of knowingly possessing counterfeited securities and one count of knowingly possessing implements designed to make counterfeited securities with the intent that they be so used.[1]  Mancillas was sentenced to serve 33 months in custody, three years of supervised release, a $200 mandatory special assessment, and restitution totalling $50,266.16 to five different check cashing entities.  Mancillas appeals, asserting that the restitution component of his sentence is illegal.  We reverse and remand.

_____

[1]  Violations of 18 U.S.C. § 513 (a) and 18 U.S.C. § 513 (b), respectively.

Facts

In December of 1997, Richard Campos was arrested after passing a fraudulent insurance check at a Corpus Christi check cashing outlet. Campos advised the Corpus Christi police that he had cashed the check for the appellant, Rey Mancillas. The United States Secret Service then began to investigate Mancillas for counterfeiting. During the course of their investigation, the Secret Service identified several other individuals who had cashed checks for Mancillas in the Houston, Austin, and San Antonio areas.

Acting on this information, the agents obtained a warrant to arrest Mancillas and to search his home. During the course of the search, the agents discovered blank counterfeit checks and equipment for the production of counterfeit checks. Mancillas was arrested, and later indicted on this two-count indictment. Mancillas eventually pleaded guilty to both counts of the indictment.

Discussion

After pleading guilty as charged, Mancillas objected to the restitution component of the presentence investigative report. Mancillas argued at sentencing, and argues now on appeal, that the check-cashing outlets were not "victims" of these crimes, as their losses were not directly tied to the conduct underlying the elements of the offense. Mancillas cited the district court to the opinion of this Court in United States v. Hayes in support of this contention.[2] The government contends that the sentence is a proper one under the Mandatory Victims Restitution Act (MVRA).[3] We review the legality of a restitution order *de novo*.[4]

---

[2] 32 F.3d 171 (5th Cir. 1994).

[3] 18 U.S.C. § 3663A.

[4] United States v. Chaney, 964 F.2d 437, 451 (5th Cir. 1992).

In Hayes, the defendant was convicted of possessing, on a specific date outlined in the indictment, credit cards stolen from the U.S. mail. The district court then ordered Hayes to pay restitution for credit card charges made during the period before that date. This Court held that the defendant's specific conduct which was the basis for his conviction, *possessing* stolen credit cards, could not be used as a basis for restitution owed for the prior *use* of those cards. [5]

At Mancillas's sentencing, the district judge distinguished Hayes in two respects. First, the district judge noted that Hayes was sentenced under the Victim and Witness Protection Act (VWPA), which has since been amended.[6] Prior to the amendment, a "victim" was anyone directly harmed as a result of the commission of the offense. Since amended by Congress both 18 U.S.C. § 3663 (the VWPA) and § 3663A (the MVRA) now define a "victim" as a person "directly and proximately harmed" as a result of the commission of the offense.

The district court also noted that in Hayes, the defendant was charged with simply possessing the stolen credit cards. Mancillas, in count of two of the indictment, was charged with possession of implements for making counterfeited securities with the intent that they be so used. The district court held that because the amendments enlarged the class of persons who could be considered victims by use of the language "directly and proximately" harmed, and because count two of the indictment included an element of "use," that restitution was proper in this case.

In the time since Mancillas was sentenced, this Court has reviewed the phrase "directly and

---

[5] 32 F.3d 171, 173 (5th Cir. 1994).

[6] The Anti-terrorism Effective Death Penalty Act amended the already-existing VWPA (18 U.S.C. § 3663) and created the new MVRA (18 U.S.C. § 3663A).

proximately harmed" in the context of the amended VWPA in <u>United States v. Hughey</u>.[7] In that case this Court expressly held that, while the amendments to the VWPA expanded the definition of "victims" to include conspiracy cases, "restrict[ing] the award of restitution to the limits of the offense, however, still stands."[8] We see no reason to apply this reasoning to the amended VWPA and not to the MVRA. Thus, the district court's reasoning that <u>Hayes</u> is distinguishable because of the language "direct and proximate" is erroneous.

We next address the issue of "use." The district court held that "use" of the implements to make counterfeit securities was an element of the crime, thus making restitution proper. The plain language of the statute contradicts this reasoning. 18 U.S.C. § 513 (b) in pertinent part, reads: "Whoever... possesses... an implement designed for or particularly suited for making a counterfeit or forged security with the intent that it be so used shall be punished" in accordance with the further statutory provisions. The language in question, "the intent that it be so used," plainly refers to *future* use of the implements, in much the same way that possession with the intent to distribute contraband refers to future distribution.

The government argues that the element of intent to use could only be proved through the introduction of evidence of prior use, which would then allow the jury to infer the defendant's intention regarding future use. The government further argues that this prior conduct is thus so intertwined with the conduct forming the basis for the indictment as to make restitution proper. We find this argument unpersuasive. Mancillas's possession of the implements with the intent to use them in the future can in no way be said to directly and proximately have caused a previous harm,

[7] 147 F.3d 423 (5th Cir. 1998).

[8] <u>Id</u>. at 437

-4-

specifically, the harm to the check-cashing companies. Further, the government's contention that prior acts are the only way to determine future intent is erroneous. By that logic, Mancillas could not have the intent to use the implements until after he had already used them at least once, thereby limiting the enforcement of this statute to repeat offenders.[9]

## Conclusion

We therefore hold that a defendant sentenced under the provisions of the MVRA is only responsible for restitution for the conduct underlying the offense for which he has been convicted. In the case before us, the district court erroneously concluded that an element of future use of the implements in the offense charged was sufficient to hold the defendant responsible for past uses of these implements.

The restitution component of Mancillas's sentence is illegal, and is hereby VACATED. The ruling of the district court with regard to restitution is REVERSED and REMANDED for sentencing consistent with this opinion.

---

[9] To re-visit the example of contraband distribution, under the government's theory, no one could be convicted of possession with the intent to distribute cocaine without evidence that they had distributed cocaine in the past. Clearly, this is not so. There are several methods which can be used to prove intent. One example is the inculpatory statement of the accused. While the contents of Mancillas's statement to the police are not before this Court, should the case have gone to trial it would likely be at least one method of proof the government would have used.